IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| SHANNON FERRARI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.  2:09-cv-49-MEF |
| | ) | |
| E-RATE CONSULTING SERVICES and | ) | (WO–Publish) |
| JONATHAN SLAUGHTER, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

### INTRODUCTION

This case is presently before the Court on a Motion to Dismiss Pursuant to Rule 12(b)(6), which defendant Jonathan Slaughter filed on February 16, 2009 (Doc. # 7), and a second, materially identical Motion to Dismiss Pursuant to Rule 12(b)(6), which defendant E-Rate Consulting Services filed the same day (Doc. # 8).  After careful consideration of the arguments of the parties and the applicable authorities, the Court finds that the Motions are due to be GRANTED in part and DENIED in part.

### LEGAL STANDARD

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint.  Therefore, for the purposes of adjudging a Rule 12(b)(6) motion to dismiss, the court will accept as true all well-pleaded factual allegations and view them in the light most favorable to the plaintiff.  *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007); *Pielage v.*

*McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).   While  Federal Rule of Civil Procedure 8(a)(2) requires only that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," as a general matter, to survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plaintiff's "[f]actual allegations must be enough to raise a right to relief above a speculative level on the assumption that the allegations in the complaint are true." *Id.* at 555. It is not sufficient that the pleadings merely "[l]eave open the possibility that the plaintiff might later establish some set of undisclosed facts to support recovery." *Id.*  at 561  (internal quotation and alteration omitted).

One additional proviso is worth mentioning here: "[t]he Eleventh Circuit has held that, when considering a 12(b)(6) motion to dismiss, a court may take judicial notice of the public record, without converting the motion to one for summary judgment [as Rule 12(d) allows when a movant presents arguments or materials that go beyond the four corners of the complaint], because such documents are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Davis v. Williams Commc'ns, Inc.*, 258 F. Supp. 2d 1348, 1352 (N.D. Ga. 2003) (citing *Bryant v. Avado Brands Inc.*, 187 F.3d 1271, 1279-80 (11th Cir. 1999)).

## FACTUAL AND PROCEDURAL HISTORY

The following facts are taken from the Complaint in this case (the "Federal Complaint") and the Complaint in a related state court case (the "State Complaint"), as they must be for purposes of these Motions. *See Martinez*, 480 F.3d at 1057; *Davis*, 258 F. Supp. 2d at 1352.

Defendant Jonathan Slaughter ("Slaughter") is a resident of Elmore County, Alabama and the sole owner of Defendant E-Rate Consulting Services ("E-Rate"), an Alabama Limited Liability Company.  Plaintiff Shannon Ferrari ("Ferrari") worked for E-Rate for three weeks in the summer of 2007.  That brief employment resulted in a lawsuit in state court by E-Rate and Slaughter against Ferrari and the instant case by Ferrari against E-Rate and Slaughter.  The details of the two cases follow.

Slaughter and E-Rate commenced an action against Ferrari in the Circuit Court of Montgomery County, Alabama on January 12, 2008.  (Doc. # 15-2.)  The State Complaint alleges that Ferrari was a problem employee who demanded more money than the salary at which she was hired and regularly complained about her compensation.  The State Complaint also alleges that she continued to complain about her compensation upon her termination and demanded that Slaughter and E-Rate pay her a large severance and a continuing monthly income, provide her with health insurance, and provide her a new wardrobe.  The State Complaint states that Ferrari threatened that if Slaughter and E-Rate did not pay her she would "make their life difficult" and they "would regret not paying her" as she demanded.

3

(Doc. # 15-2 ¶ 5.)  The State Complaint alleges that when Slaughter and E-Rate did not meet Ferrari's requests she threatened to make claims and institute suits against them, for, among other things, sexual harassment.

The State Complaint details an incident on January 2, 2008, in which Slaughter approached Ferrari in a local bar to discuss the problems arising from her termination. According to the State Complaint, Ferrari filed a baseless criminal complaint for harassment against Slaughter the day after the incident in the local bar.  The State Complaint alleges that the criminal harassment complaint contained false, libelous, and defamatory statements.  The State Complaint also details an attempt on January 4, 2008, by Ferrari to interrupt E-Rate's business by calling the Commissioner of Agriculture and Industries, with whom E-Rate works under contract, and sharing with the Commissioner false and defamatory statements.

The State Complaint presents claims arising from these occurrences in three counts: one each for libel and slander, false light, and intentional interference with contractual and/or business relations.  Ferrari answered the State Complaint on February 14, 2008.

Ferrari, defendant in the state court action, filed a Complaint in this Court on January 21, 2009. (Doc. # 1.)  The Federal Complaint named Slaughter and E-Rate, plaintiffs in the state court action, as defendants.  The Federal Complaint alleges that Slaughter began sexually harassing Ferrari daily shortly after hiring her.  The harassment began, according to the Federal Complaint, when Slaughter offered to put Ferrari on a "full scholarship," which meant an increased salary if she would stay home with her children and move into a

house he claimed he owned, and would include a BMW automobile if she would travel with him and be his girlfriend.  The Federal Complaint lists other instances of sexual harassment, including overt sexual propositioning of Ferrari by Slaughter, groping, attempts to massage, and regular references to Ferrari's private parts by a nickname Slaughter contrived.  Finally, the Federal Complaint alleges that Slaughter took Ferrari on a trip with other males and insisted that she do drugs with them.  Ferrari quit her job on July 27, 2007, after this final incident.

According to the Federal Complaint, Ferrari asked Slaughter about certain money that he owed her after her resignation, and Slaughter agreed to pay her a bonus he had promised her and three months severance pay.  The Federal Complaint also alleges that Slaughter has continued to attempt to harm Ferrari by telling people he had been having a sexual affair with her.  The Federal Complaint also details the altercation at the nightclub detailed in the State Complaint, though this time the allegation is that Slaughter followed Ferrari to the club, grabbed her, pulled her off a bar stool, and told her to leave with him.  The Federal Complaint also details the subsequent harassment charge, though it claims the allegations were justified.

Finally, the Federal Complaint alleges that as a result of these happenings, on or about January 10, 2008, Ferrari filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  The Federal Complaint states that Ferrari received a notice of right to sue on or about November 16, 2008.

The Federal Complaint contains five counts, one each for sexual harassment in violation of Title VII, constructive termination, assault and battery under state law, retaliation, and outrage.

## DISCUSSION

Defendants argue in their Motions that the compulsory counterclaim rule bars the instant action. They claim that "the very allegations contained in the Plaintiff's complaint at bar are addressed in the State Complaint filed by the E-Rate Consulting and Jonathan Slaughter in the action against the Plaintiff Shannon Ferrari." (Doc. # 8 ¶ 9.) Hence, Defendants argue, Ferrari's claims are compulsory counterclaims that Ferrari failed to assert in the prior-in-time state case. The federal case must therefore be dismissed, or so the argument goes.

Ferrari disputes Defendants' assertions. First, she claims she was not able to bring her claims as compulsory counterclaims in the state case because her Title VII claims did not mature until she received the right-to-sue letter on or about November 16, 2008, "well into the process of the state court case." (Doc. # 11 ¶ 4.) Ferrari also claims that she was free to not bring the instant claims in the state court proceeding because they do not arise from the same transaction or occurrence as the state court claims brought by E-rate Consulting Services in state court. Ferrari argues that the Title VII sexual harassment claims are both factually and legally distinct from the libel, slander, false light, and intentional interference with contractual and/or business relations claims against her in state court.

Ferrari's claims are barred if they were compulsory counterclaims that should have been alleged in the state case that names her as a defendant. Alabama law governs the question of whether Ferrari's claims were compulsory counterclaims in the earlier action. *See Montgomery Ward Dev. Corp. v. Juster*, 932 F.2d 1378, 1380 (11th Cir. 1991) ("Whether failure to bring a compulsory counterclaim in a prior state court proceeding bars a diversity action on that claim in a federal district court . . . depends upon state law."); *Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1509 (11th Cir. 1985) ("when a federal court exercises federal question jurisdiction and is asked to give res judicata effect to a state court judgment, it must apply the " res judicata principles of the law of the state whose decision is set up as a bar to further litigation.").  Since the res judicata rules of the State of Alabama control what actions can be brought in federal court when there was prior related state court litigation, Ferrari's claim should be barred here if the same suit would be barred in an Alabama state court.

Alabama's compulsory counterclaim rule tracks Rule 13(a) of the Federal Rules of Civil Procedure, whose purpose is "to prevent multiplicity of actions" by "[resolving] in a single lawsuit . . . all disputes arising out of common matters." *S. Constr. Co. v. Pickard*, 371 U.S. 57, 60 (1962).  Thus, if such a counterclaim is not brought with the original action, "relitigation of the claim may be barred by the doctrines of res judicata or collateral estoppel by judgment in the event certain issues are determined adversely to the party electing not to

assert the claim." *Id.*[1]  Alabama Rule of Civil Procedure 13(a) requires that a pleading "state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim."  The rule has two requirements: (1) that the claims arise from the same transaction or occurrence, and (2) that they be available to the defendant at the time she serves her answer in the first case.  The Court takes these requirements up in turn.

### A. Same Transaction or Occurrence

A claim can only be a compulsory counterclaim under Alabama Rule 13(a) if it arises from the same transaction or occurrence as the subject of the opposing party's claim. Ala. R. Civ. P. 13(a).  Alabama courts have interpreted this provision realistically and broadly to avoid a "wasteful multiplicity of litigation on claims that arose from a single transaction or occurrence." *Grow Group, Inc. v. Indus. Corrosion Control, Inc.*, 601 So. 2d 934, 936 (Ala. 1992). In its efforts to avoid inefficiency, the Alabama Supreme Court has concluded that a "counterclaim is compulsory if there is any logical relation of any sort between the original claim and the counterclaim." *Ex parte Cincinnati Ins. Cos.*, 806 So. 2d 376, 380 (Ala. 2001)

---

[1]There is some question about whether failure to assert a claim that is a compulsory counterclaim in a prior-in-time action can operate to bar pursuit of such a claim when the prior-in-time action has not proceeded to judgment.  The Alabama Supreme Court has held, however, that when a matter raised in a later-filed case constituted a compulsory counterclaim in a previously filed but still pending case, the compulsory counterclaim rule barred prosecution of the counterclaims and required dismissal of the later-filed action. *Ex parte Canal Ins. Co.*, 534 So. 2d 582, 584-85 (Ala. 1988); *see also Blue Cross and Blue Shield of Ala. v. Hobbs*, 209 F.R.D. 218, 220 (M.D. Ala. 2002) (Albritton, J.) ("Although it is clear that claims asserted in a subsequent action are due to be dismissed when they should have been asserted as compulsory counterclaims in a case which proceeded to judgment, claims may also be dismissed when the prior action is still pending.") (citation omitted).

(quoting Ala. R. Civ. P. 13(a), Committee Comments on 1973 Adoption of Rule 13, at ¶ 6); *see also Akin v. PAFEC Ltd.*, 991 F.2d 1550, 1561 (11th Cir. 1993).   Under the logical-relationship standard, a counterclaim is compulsory if "(1) its trial in the original action would avoid a substantial duplication of effort or (2) the original claim and the counterclaim arose out of the same aggregate core of operative facts." *Ex parte Cincinnati*, 806 So. 2d at 380.  To determine whether the claims arise from the same core of operative facts, a court should ask if "the facts taken as a whole serve as the basis for both claims" or whether "the sum total of facts upon which the original claim rests creates legal rights in a party which would otherwise remain dormant." *Id.* (quoting *Ex parte Canal Ins. Co.*, 534 So. 2d 582, 584 (Ala. 1988)). Pursuant to these standards, any claims which arose from the same transaction or occurrence and which Ferrari had at the time she filed the Answer in the state case are barred by res judicata. *Ex parte Water Works*, 738 So. 2d 783, 792-93 (Ala. 1998).

The claims by Ferrari in the federal case arise from the same transaction or occurrence as the claims against her in the state case.  The original claim in the state case and the claims Ferrari makes in this case are logically related because they arose from the same core of operative facts.  Indeed, the State and Federal Complaints read like two versions of the same story—one by Ferrari and one by Slaughter and E-Rate—and this is the essence of the same transaction or occurrence test.  For example, the first focus of the State Complaint is Ferrari's demands relating to her compensation and alleged threats that she would "make their life difficult" and that Slaughter and E-Rate "would regret not paying her" as she demanded.  The

Federal Complaint also focuses on issues of compensation, except Ferrari presents her demands for compensation as justified and benign.  Another dominant feature of the State Complaint is the encounter between Ferrari and Slaughter in a local nightclub and the subsequent harassment charge.  The Federal Complaint also goes into great length about this encounter and ties it to Ferrari's discrimination claims.  More generally, the claims in both cases all arise from the three-week employment relationship—they are closely tied in time, the parties are the same in both complaints, and they both depend on the same discrete events.  These complaints embody the very multi-jurisdictional he-said, she-said situation the Alabama Supreme Court seeks to eliminate by the compulsory counterclaim rule. *See Grow Group*, 601 So. 2d at 936 (stating that the purpose of the compulsory counterclaim rule is to avoid wasteful and multiplicitous litigation arising from the same transaction or occurrence)**.** Though there are facts in the State Complaint that are not in the Federal Complaint and facts in the Federal Complaint that are not in the state complaint, the facts, taken as a whole, serve as the basis for both claims. *Brooks*, 414 So. 2d at 917.  Moreover, because of their close factual relationship and the identity of the parties,  the trial of the claims in the Federal Complaint "in the original action would avoid a substantial duplication of effort."   *Ex parte Cincinnati*, 806 So. 2d at 380.   Therefore, to the extent the claims in the Federal Complaint otherwise meet the requirements for Rule 13(a) to apply, they are barred by the compulsory counterclaim rule in this federal case.

## B. Claims Ferrari "Had" at the Time of Serving the Answer

Alabama Rule of Civil Procedure 13(a) requires that a pleading "state as a counterclaim any claim *which at the time of serving the pleading the pleader has against any opposing party*, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." (emphasis added). Thus, to determine whether Ferrari's claims, which arose from the same transaction or occurrence as the claims against her in the state case, are barred by the compulsory counterclaim rule the Court must determine whether Ferrari "had" these claims when she served her Answer in the state case. The Court will address the Title VII claims first and then turn briefly to the state law claims.

Ferrari filed an Answer in the state case on February 14, 2008, and received the right to sue letter from the EEOC on or about November 16, 2008. However, her Title VII claims accrued prior to the date she served the Answer, as the alleged discriminatory acts occurred in the summer of 2007. Thus, the relevant events happened in this order: alleged discrimination and accrual of Title VII claims; EEOC complaint; state suit against victim of alleged discrimination and EEOC complainant; answer in the state case; victim/complainant receives right-to-sue notification; victim/complainant files suit in federal court. Applying Alabama Rule 13, if Ferrari "had" the discrimination claims upon their accrual or upon the filing of her complaint with the EEOC, the claims are barred as non-filed compulsory counterclaims. If, on the other hand, she did not "have" the claims until receipt of the right-to-sue letter, the claims are not barred by the compulsory counterclaim rule. The issue,

therefore, is whether a party who has allegedly suffered discrimination and filed a charge of discrimination with the EEOC but has not received a right-to-sue letter must file her discrimination claims as counterclaims in a suit in the courts of the state of Alabama brought against her by her employer, given that the discrimination claims arise from the same transaction or occurrence for purposes of Alabama Rule 13(a) as the claims made against her in the state case.  Though there is no Alabama case directly on-point, Alabama Supreme Court precedent makes it clear that such a counterclaim is not compulsory.

Alabama's compulsory counterclaim rule does not require a defendant to file as a compulsory counterclaim a claim that has not yet "matured."  *Bedsole v. Goodloe*, 312 So. 2d 508, 517 (Ala. 2005) ("'[T]he party need not assert a counterclaim that has not matured at the time he serves his pleading. This is derived from the language in the rule limiting its application to claims the pleader has "at the time of serving the pleading." A counterclaim acquired by defendant after he has answered will not be considered compulsory, even if it arises out of the same transaction as does plaintiff's claim.'") (quoting *Liberty Mut. Ins. Co. v. Wheelwright Trucking Co.*, 851 So. 2d 466, 484 (Ala. 2002)); *see also Steinberg v. St. Paul Mercury Ins. Co.*, 108 F.R.D. 355, 358 (S.D. Ga. 1985) ("Rule 13(a) applies to counterclaims that have matured at the time the defendant serves his pleadings. Thus, a counterclaim acquired by defendant after he has answered will not be considered compulsory, even if it arises out of the same transaction as does plaintiff's claim.  A counterclaim which is likely to arise or is contingent at the time the defendant serves his answer, is not "matured" for the

purposes of Rule 13(a).") (internal citations, quotations, and alterations removed).[2]  The Alabama Supreme Court has explained what it means to have a claim: "To be deemed compulsory, the counterclaim must be in actual existence, as distinguished from inchoate or potential existence, at the time the defendant answers the complaint. . . . Although the counterclaim is likely to arise or is contingent at the time the defendant serves an answer, it has not 'matured' for purposes of [Alabama Rule of Civil Procedure 13(a).]" *Id.* at 517 (citing 27 Fed. Proc., L.Ed. § 62.230 (1996));  *see also Steinberg*, 108 F.R.D. at 358 ("Defendant's counterclaim must be completely vested at the time defendant serves his answer for such claim to be matured for the purposes of Rule 13(a).")

It is well settled that before bringing a Title VII suit in federal court, an aggrieved employee must file a charge of discrimination with the EEOC and obtain a right-to-sue letter. *See* 42 U.S.C. § 2000e-5(e); *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001) ("Before a potential plaintiff may sue for discrimination under Title VII, she must first exhaust her administrative remedies."); *Forehand v. Fla. State Hosp. at Chattahoochee*, 89 F.3d 1562, 1567 (11th Cir. 1996) ("Before instituting a Title VII action in federal district court, a private plaintiff must file an EEOC complaint against the discriminating party and receive statutory notice from the EEOC of his or her right to sue the respondent named in the charge."); *Pinkard v. Pullman-Standard*, 678 F.2d 1211, 1215 (11th Cir. 1982) ("Before

---

[2]The Alabama Supreme Court has noted that compulsory-counterclaim language from Rule 13(a), Ala. R. Civ. P., is identical to the language of Rule 13(a), Fed. R. Civ. P.  *Besole*, 312 So. 2d at 517 n.5.

instituting a Title VII action in federal district court, a private plaintiff must file an EEOC complaint against the discriminating party within 180 days of the alleged discrimination and receive statutory notice of the right to sue the respondent named in the charge.").   An aggrieved party may obtain a right-to-sue letter after filing a timely EEOC complaint in one of two ways: (1) if, after the expiration of 180 days, the charge has not been dismissed and no other action has been taken by the EEOC, the EEOC is required to notify the claimant and that claimant may bring suit in district court within 90 days thereafter; or, (2) the complainant may request a right-to-sue letter before the 180-day period has expired and the EEOC may grant such a request.  *Forehand*, 89 F.3d at 1567.

The Title VII claim was not "mature" at the time Ferrari served the Answer.  As detailed extensively above, the filing of a charge of discrimination with the EEOC is a condition precedent to bringing a Title VII civil rights action. 42 U.S.C. § 2000e-5(e); *Ex parte Sverdrup Corp.*, 692 So. 2d 833, 835 (Ala. 1996); *see also Pinkard*, 678 F.2d at 1218-19 (right-to-sue letter is a "condition precedent"); *Forehand*, 89 F.3d 1569-70 (holding that a private plaintiff must file a charge of discrimination and obtain a right-to-sue letter prior to commencing an action and that the right-to-sue letter is a "statutory precondition" ).  Therefore, had Ferrari brought her Title VII claims as compulsory counterclaims in the state case they would have been subject to dismissal.  A claim subject to dismissal for failure to satisfy statutory prerequisites is by no means mature.  Moreover, once a potential plaintiff files a charge of discrimination with the EEOC, the availability of a justiciable claim is

14

contingent upon failure of the EEOC to obtain voluntary compliance with the law.   As the

Alabama Supreme Court has noted with approval, the former Fifth Circuit once explained

that:

> A charge of discrimination is not filed as a preliminary to a lawsuit. On the
> contrary, the purpose of a charge of discrimination is to trigger the
> investigatory and conciliatory procedures of the EEOC. Once the charge has
> been filed, the Commission carries out its investigatory function and attempts
> to obtain voluntary compliance with the law. Only if the EEOC fails to achieve
> voluntary compliance will the matter ever be the subject of court action.

*Sverdrup*, 692 So. 2d at 836 (quoting *Sanchez v. Std. Brands, Inc.*, 431 F.2d 455, 466 (5th

Cir. 1970).[3]   It seems plain, then, that Ferrari's claim did not mature when the alleged

discrimination occurred or even when she filed a charge of discrimination with the EEOC.

Rather, her claim did not mature until she receive the right-to-sue letter in November, 2008.

A potential plaintiff awaiting a right-to-sue letter has but an inchoate cause of action,

contingent upon failure of the EEOC to successfully conciliate the dispute, and which would

be subject to dismissal if pressed.  *See Bedsole*, 312 So. 2d at 517.  Such a claim is not in

"actual existence" and is not "mature" under Alabama law.  *See id.*  Hence, failure to file it

does not trigger the compulsory counterclaim rule.

Although there is no binding Alabama precedent or persuasive Eleventh Circuit

precedent directly on point, the Tenth Circuit has addressed this issue in the context of the

Americans with Disabilities Act ("ADA") and reached the same conclusion as the Court does

---

[3]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*), the
Eleventh Circuit Court of Appeals adopted as precedent decisions of the former Fifth Circuit
rendered prior to October 1, 1981.

here.  In *Stone v. Department of Aviation*, 453 F.3d 1271, (10th Cir. 2006), the Tenth Circuit addressed the question of whether at the time a federal court plaintiff filed his answer in a previously filed state-court action, he had a "matured" ADA claim which he could have asserted against the state-court plaintiff. At the time he filed the answer, however, the federal-court plaintiff had filed his charge of discrimination with the EEOC but had not yet received a right-to-sue letter on his ADA claim. The Tenth Circuit noted, as this Court has, that without the right-to-sue letter, the ADA claim would have been subject to dismissal by the state court. *Id.* at 1276.  The Tenth Circuit went on to hold that it was "axiomatic that a party does not have a matured claim, sufficient to be deemed a compulsory counterclaim, if that claim is subject to dismissal because all the conditions precedent to asserting it have not yet occurred." *Id.*[4]  Because of its closely analogous facts and careful reasoning, the Court finds this opinion highly persuasive.

For the foregoing reasons, Ferrari's claims pursuant to Title VII, specifically Counts I, II, and IV, were not mature at the time she served the answer in the State Court suit. Therefore, the Motions to Dismiss are due to be denied with respect to these Counts.  Counts III and V, for assault and battery and outrage respectively, were mature at the time Ferrari served her answer in the state court suit because they accrued at the time of the injuries—which was before she served the Answer—and there were no bars to bringing those

---

[4]The Tenth Circuit in *Stone* was applying Colorado Rule of Civil Procedure 13, which is (like Alabama Rule of Civil Procedure 13) "almost identical to" Federal Rule of Civil Procedure 13. *Stone*, 453 F.3d at 1276 n.6 (Colorado rule); *Besole*, 312 So. 2d at 517 n.5 (Alabama rule).

claims immediately upon their accrual. *See Locker v. City of St. Florian*, 989 So. 2d 546, 549 (Ala. Civ. App. 2008) (holding that the claim of a party who alleges he suffered assault and battery and outrage accrued at the time of the injury and that the party was entitled to bring an action for redress of his alleged injuries on the date of that injury). Therefore, the assault and battery and outrage claims (Counts III and V) should have been brought as counterclaims in the state case and are barred by the compulsory counterclaim rule from being litigated in this federal action. The Motions to Dismiss are therefore due to be granted with respect to these Counts.

## CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that the Motions to Dismiss (Doc. ## 7, 8) are GRANTED in part and DENIED in part. The Motions are granted with respect to Counts III and V, which are DISMISSED with prejudice, and denied with respect to the remaining Counts.

DONE this the 17th day of September, 2009.

_____/s/ Mark E. Fuller_____
CHIEF UNITED STATES DISTRICT JUDGE